**Daniel Lee BLEDSOE, By and Through his Guardians, Gary BLEDSOE and Danna Minnick, Appellees,**

v.

**F.A. TRUSTER and Missouri Pacific Railroad Company, Appellants.**

**No. 77131.**

Court of Appeals of Oklahoma, Division 1.

March 3, 1992.

Rehearing Denied April 20, 1992.

Certiorari Denied Oct. 28, 1992.

Tom L. Armstrong, Jeannie C. Henry, Tulsa, for appellants.

Lloyd Paxton, Muskogee, for appellees.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Daniel Lee Bledsoe (Driver), by and through his Guardians, Gary Bledsoe and Danna Minnick, filed an action to recover for damages due to bodily injuries suffered when his automobile collided with a train. F.A. Truster was the engineer and the train was owned by Missouri Pacific Railroad Company (collectively Railroad). Driver alleged in his petition that the collision and his resultant injuries were a direct and proximate result of negligence on the part of Railroad. The petition contained a prayer for damages in excess of Five Million Dollars ($5,000,000.00).

Railroad answered and denied Driver's allegation of negligence. As a defense, Railroad alleged the accident to have been caused by: (1) the negligence of Driver; (2) the negligence of Traci Foster, a passenger in Driver's automobile; and, (3) the negligence of Tera Foster, a Passenger in Driver's automobile. Tera Foster was killed in the collision. Neither Traci Foster nor the Personal Representative of Tera Foster are parties to this appeal.

The matter was set for jury trial which was held, and resulted in a verdict for Railroad. Driver moved for a new trial on the grounds that: (1) there was an irregularity in the proceedings of the trial which prevented him from having a fair trial; (2) that there was jury misconduct that prevented him from having a fair trial; (3) that the verdict was not sustained by sufficient evidence and therefore contrary to law; and, (4) that an error of law occurred at the trial prejudicing his rights. Railroad responded to the motion and a hearing was held on the matter. At the hearing, a juror testified that during a recess when all jurors were present, a discussion occurred that the reason a deposition of Traci Foster was not allowed to be heard by the jury was because of testimony by Traci Foster that Driver had attempted to outrun the train at the time of the collision. The juror also testified that the jurors conjectured about the placement of lights at the intersection since the accident.

The following testimony was given by the juror at the hearing on the Motion for New Trial:

Q. (By Mr. Payton) [Driver's Attorney] Do you recall whether or not, previous to a break, counsel for the defendant asking a witness and attempting to read from a deposition that Tracy (sic) Foster had given at a previous date to this trial?

A. [Juror] Yes.

MR. ARMSTRONG [Railroad's Attorney]: Objection. Irrelevant and improper.

THE COURT: Overruled.

MS. ECHISON [Juror]: Yes.

Q. (By Mr. Payton) Did you, after the case was recessed, have occasion for all of the jurors to be present together here in the courthouse?

A. Yes.

Q. Was this during a break?

A. Yes.

Q. Was there any statements made concerning Danny Bledsoe [Driver], the Fosters, or this case that was discussed among the jurors?

A. Yes.

Q. Would you relate to the Court those discussions that were had? What was said?

MR. ARMSTRONG: Same objection.

THE COURT: Overruled.

MS. ECHISON: It was discussed about the reason Tracy (sic) Foster's deposition wasn't allowed was because the Fosters had filed a lawsuit. They were waiting on Danny's [Driver] lawsuit to be over with. And if he lost, they were going to sue Danny, because they said in the deposition—in Tracy's (sic) deposition she said that Danny tried to outrun the train.

\*　　\*　　\*　　\*　　\*　　\*

Q. (By Mr. Payton) Where all the jurors present when that discussion took place?

A. Yeah. We were in the second floor jury room.

\*　　\*　　\*　　\*　　\*　　\*

Q. (By Mr. Armstrong) Was it common for the jurors, yourself included, ... to speculate during the course of the trial among yourselves about why certain things were done in the courtroom and why there were not?

A. I guess—I guess they did. I just was there in the break room with the rest of the jury, because that's the only place we had to go. And they just started—everybody just started talking about it. But before that, no.

Q. About why the Tracy (sic) Foster deposition was not used?

A. Yeah.

Q. Did the different jurors speculate about that?

A. Oh, yes.

Q. Was this information that you all discussed back an forth at that time, was that speculation by the jurors about why the deposition wasn't used?

A. Yeah. Speculation about that, and speculation about why the Fosters weren't involved in that particular lawsuit.

\*　　\*　　\*　　\*　　\*　　\*

Q. [Railroad Attorney] Did anyone purport to ever have read the deposition, or to have talked to anyone who had read the deposition and know what was actually in the deposition? Or was it speculation?

A. [Juror] I'm not sure. Because the lady that mentioned it, I don't know if she knew somebody that had read it or had read part of it. I don't know. But the lady that mentioned it was—you know, she was talking about the deposition. I don't know where she got that information.

Q. Do you know in your own mind whether or not she actually knew information that you all didn't know, or was speculating?

A. I don't know.

The trial court sustained Driver's Motion for New Trial on the issue of jury misconduct. The trial court found that the statements made by a juror to other jurors introduced extraneous prejudicial information, which amounted to juror misconduct as contemplated by 12 O.S.1981 § 651 (Second). Specifically, the new trial was granted because of the juror's statements regarding Traci Foster's deposition.

Railroad appeals asserting it was improper for the trial court to allow a juror to

testify regarding conversations among the jurors. Railroad cites 12 O.S.1981 § 2606(B). It provides:

B. Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon his or another juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment concerning his mental processes during deliberations. *A juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* An affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying shall not be received for these purposes. (Emphasis added.)

■ While a juror may not testify as to the jury's deliberations or the effect of anything on the jury's state of mind, see *Weatherly v. State*, 733 P.2d 1331 (Okl.Cr. 1987), he or she may testify about extraneous prejudicial information. In *Willoughby v. City of Oklahoma City*, 706 P.2d 883 (Okl.1985), the Court held that a juror is competent to testify concerning extraneous prejudicial information which influenced the jury's deliberations.

The juror's testimony here was that the jury received information about Traci Foster's deposition. Such information was outside the scope of the trial and not in evidence. As testified to by the juror, she and the other jurors received such information which caused speculation. This outside information was obviously prejudicial.

Railroad contends, citing *Van Buskirk v. Carey Canadian Mines*, 760 F.2d 481 (3rd Cir.1985), that *intra*-jury influences are not grounds for reversal, and that evidence must prove that extraneous and prejudicial information was presented to the jury. We agree with this contention. The Juror testified that another juror communicated to the entire jury certain extraneous evidence that was prejudicial to Driver's cause of action. This was not merely an *intra*-jury influence. It constituted extraneous prejudicial information.

In the alternative, Railroad contends, in effect, that if this Court finds that extraneous prejudicial material was brought to the jury's attention, it was harmless as there was other evidence to support the speculation by the jury that Driver attempted to outrun the train. Whether other evidence was introduced to support this finding does not cure the problem that Driver was deprived of his right to have this case determined by a jury free from undue external influence. The right to a jury free from prejudice by outside influences must be jealously guarded.

■ A Motion for New Trial is addressed to the sound discretion of the trial court and absent error as to a pure question of law, or an arbitrary ruling, every presumption will be indulged in favor of trial court's ruling on appeal. *Bennett v. Hall*, 431 P.2d 339 (Okl.1967). No showing of an abuse of discretion, an arbitrary ruling, or error as to a pure question of law, has been shown.

AFFIRMED.

BAILEY and ADAMS, JJ., concur.