**Raymond D. NALLEY, Appellee,**

v.

**KELLWOOD COMPANY, a foreign corporation, Appellant.**

**No. 76901.**

Court of Appeals of Oklahoma, Division No. 2.

April 20, 1993.

Rehearing Denied July 26, 1993.

Certiorari Denied Jan. 18, 1994.

John Sprowls, Pauls Valley, for appellee.

Brett Agee, Alan Agee, Garvin & Agee, Pauls Valley, for appellant.

RAPP, Presiding Judge.

Trial court defendant, Kellwood Company, appeals denial of its motion for new trial following a jury verdict in favor of plaintiff, Raymond D. Nalley. The plaintiff cross appeals the trial court's grant of remittitur.

Nalley injured himself on March 27, 1985, while in the employ of Kellwood. He, without objection, saw his family doctor, who referred him to another doctor, who in turn referred him to a third doctor, a Dr. S. Nalley filed a workers' compensation claim April 14, 1986.

His attorney sent him to another doctor, Dr. E. Dr. E. sent Kellwood a letter dated April 16, 1986, stating Nalley "has reached full benefit from medical treatment" and was temporarily and totally disabled from injury to the date of the letter, April 16, 1986.[1] Meanwhile, still being treated by Dr. S., Nalley saw Dr. S. on two dates after April 16. Dr. S. released Nalley to return to work on May 26, 1986. Dr. S. communicated this to both Kellwood's insurance carrier and Nalley's attorney.[2] The insurance carrier then communicated this to Kellwood.

Nalley did not report on May 26. He reported for work on June 10, without a doctor's return-to-work slip and was sent for one.[3] Nalley left and returned the following day with a slip from Dr. E. On his return, he was informed his position was filled since he had been gone over three days without a valid excuse. Nalley stated he asked his supervisor if his termination was due to his back injury and was told yes.[4]

Nalley filed a claim for unemployment compensation with the Oklahoma State Employment Commission, which was denied on grounds of employee misconduct based on Nalley's failure to "take necessary steps to maintain his job." Thereafter, Nalley sued Kellwood on February 18, 1988, for retaliatory discharge. The matter was tried before a jury and a verdict was returned in favor of Nalley for actual damages in the sum of $5,000 and punitive damages in the sum of $50,000. Kellwood moved for remittitur, which the trial court granted, reducing the punitive damages award to $25,000. The trial court then entered judgment on the modified verdict.

Both parties appeal. Kellwood has set out numerous points of alleged error, with Nal-

---

1. Dr. E. testified during deposition that part of the letter was a mistake and not intended to be sent. It was sent due to non-deletion from the word processor. However, this was not communicated to Kellwood until the deposition.

2. Nalley admits his attorney showed him Dr. S.'s letter prior to his return to work on June 10, 1986.

3. Kellwood states it had not received Dr. S.'s confirmation letter via mail on June 10, although it admits it knew of Dr. S.'s letter and release.

4. The supervisor denies this statement. Nalley himself is unable to say if it occurred, stating at trial he "might have" discussed why he was fired.

ley's cross appeal presenting a single issue involving remittitur. Nalley's cross appeal is disposed of by the disposition of Kellwood's appeal and is thus not set forth separately.

Kellwood asserts two principal propositions of error, each containing multiple, separate sub-allegations. Prior to reaching the principal allegation of error considered, it is noted that Kellwood's proposition 1 and its sub-propositions of error were not contained in its motion for new trial presented to the trial court. This failure is fatal to the alleged allegation of error and prevents its consideration by this court. *See Faulkenberry v. Kansas City Southern Ry. Co.*, 661 P.2d 510 (Okla.1983). This then brings us to proposition 2 and its separate allegations of error. Here again, we eliminate propounded allegations of error numbered A2, B and D of proposition 2 for the reason they are not supported by authority.[5]

Kellwood's first surviving proposition asserts the trial court erred in its failure to admit into evidence Nalley's purported failure to pass a drug screening test given by a previous employer. This allegation is without merit. The issue before the trial court did not involve a prior pattern of alleged misconduct by the plaintiff, nor did it involve the use or distribution of drugs. The issue, of which the plaintiff had the burden of proof, was that of alleged retaliatory discharge by the defendant. The excluded evidence of a drug screen failure was not probative in that it does not tend to prove or disprove the defendant's retaliatory discharge, nor does it tend to prove or disprove Nalley did not rely upon his doctors' advice. Moreover, the tendered evidence is not relevant. It does not have "any tendency to make the existence" of non-retaliatory discharge more probable with its admission than by its exclusion.[6] Thus, the trial court was correct in its exclusion.

Kellwood's second surviving proposition concerns alleged jury misconduct based on jurors' remarks during deliberation in which supposedly extraneous information and personal views were brought into the jurors' discussion. Kellwood, in support, proffers identical affidavits from two jurors. The affidavits, contrary to showing extraneous influence or misconduct, indicate the jury acted as the process intended—the jurors brought their thoughts and backgrounds to their deliberations. Moreover, the defendant overlooks 12 O.S.1991 § 2606(B), which states:

B. Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon his or another juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes during deliberations. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying shall not be received for these purposes.

The defendant has submitted no evidence showing misconduct of the jury or that any prejudicial information was brought into the jury room. Here, the decision developed from what the jury believed of the evidence presented. While the evidence of record may permit several inferences, we are bound by that set out by the jury, for which competent evidence exists. This action being one in tort, we note the supreme court's statement in *Walker v. St. Louis–San Francisco Ry. Co.*, 646 P.2d 593, 597 (Okla.1982), citing another holding wherein the court stated:

[W]e adhere to the rule set forth in the syllabus of *Wat Henry Pontiac v. Pitcock*, Okl., 301 P.2d 203 (1956):

---

5. *See Peters v. Golden Oil Co.*, 600 P.2d 330 (Okla.1979). Assignment of error not supported by authority will be considered was waived by this court.

6. *See* 12 O.S.1991 § 2401.

"In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and *where there is any competent evidence reasonably tending to support the verdict of the jury,* this court will not disturb the verdict and judgment based thereon."

We thus found this proposition also without merit.

■ Kellwood's third and last surviving proposition alleges error in the jury's award of punitive damages unauthorized by law. The jury returned a punitive damage verdict for $50,000, subsequently reduced by the trial court to $25,000 on the defendant's motion for remittitur. The defendant correctly points out that there are here two penal statutes involved in this matter of retaliatory discharge, both of which must be construed together or in pari materia. The first, 85 O.S.1991 § 6, limits awards of punitive damages to a maximum of $100,000,[7] while the second applicable statute, 23 O.S.1991 § 9, states:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, *in an amount not exceeding the amount of actual damages awarded.* Provided, however, *if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury,* that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the

rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and *the percentage limitation on such damages set forth in this section shall not apply.*

B. The provisions of this section shall be strictly construed. (Emphasis added.)

This statute, in section B, clearly allows no deviation. Thus, when these two statutes are read in pari materia, they reveal mandatory restrictions on the award of punitive damages in retaliatory discharge matters.

The record shows no evidence that the trial court complied with section A of the statute by making the requisite finding after the evidence was in, and out of the jury's presence, that the defendant, by clear and convincing evidence, was guilty of conduct "evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed" which would then allow punitive damages in excess of actual damages. Thus, under the admonition of section B of this statute and the trial court's failure to follow the requirement of section A, we must agree the jury awarded excess punitive damages. Accordingly, the trial court's judgment on the jury's verdict for punitive damages in the sum of $25,000 in favor of the plaintiff Nalley will be modified and reduced to the sum of $5,000 in accord with the statute.

The trial court judgment based on the jury verdict granting the plaintiff Nalley actual damages in the sum of $5,000 against the defendant Kellwood will be affirmed. The trial court judgment based on the jury verdict granting the plaintiff Nalley punitive damages in the sum of $25,000 after trial court remittitur will be modified to the sum of $5,000 punitive damages and affirmed as

7. 85 O.S.1991 § 6 states:

Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers'

Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00). The burden of proof shall be upon the employee. (Footnotes omitted.)

modified, said judgment to bear interest from the date of judgment.

The trial court decision is affirmed in part, modified in part and affirmed as modified.

REIF, V.C.J., concurs.

BRIGHTMIRE, J., concurs in part and dissents in part.

BRIGHTMIRE, Judge, concurring in part and dissenting in part.

I concur with the result reached by the majority with respect to Kellwood's complaints of jury misconduct and exclusion of evidence.[8]

I am unable to agree, however, with the majority's conclusion that the damage limit provision of our punitive damage statute—23 O.S.1991 § 9(A)[9]—supersedes the punitive damage limit the legislature established in 85 O.S.1991 § 6.[10] Moreover, in my opinion the trial court erred in reducing the punitive damage award to $25,000. Here is why.

### I

First of all it is to be noted that in § 9(B) of the statute's 1986 amendment, the legislature specified that the statute is to be "strictly construed." This means that in case of an ambiguity the new language should be construed in a manner which will narrow rather than broaden its scope. No such interpretive restriction was added to § 6 which means, of course, that it is to be construed liberally in a manner aimed at fulfilling the intent and purpose of the legislation as is required with respect to the rest of the Workers' Compensation Act.[11]

Secondly, it should be borne in mind that the 1986 amendment of § 6 consisted of two

---

**8.** It is my opinion that Kellwood's Proposition 1(B) was sufficiently set out in its motion for a new trial, petition in error and brief, and should be reviewed. It is also my opinion that the majority's rejection of the employer's propositions 2(A)(2), 2(B) and 2(D) on the ground that they are "not supported by authority" is contrary to established principles of appellate review. The law is that assignments of error must be supported *either* by argument *or* authority. *Peters v. Golden Oil Co.*, 600 P.2d 330 (Okl.1979). *Here Kellwood did both*—proposition 2(A)(2) is simply a continuation of the preceding subproposition which contains both argument and authority. And in 2(B) and (D) the employer cites the best genre of law—statutory law—and argues that it was violated. These issues have been properly preserved for appellate review and should be resolved by this court.

**9.** The statute reads:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless

disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply shall not apply.

To the extent the second sentence of § 9(A) authorizes the court to make findings of fact, *i.e.*, whether or not the plaintiff has proved certain facts by clear and convincing evidence, it authorizes an invasion of the litigant's right to have a jury determine such facts. The statutory invasion of the plaintiff's constitutional rights is even more pronounced by predicating the extent of the plaintiff's recovery of punitive damages on such findings of fact by the judge.

**10.** Title 85 O.S.1991 § 6 reads:

Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive *if applicable*, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. *Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00).* (Emphasis added) (footnotes omitted).

**11.** The right of recovery under the Workers' Compensation Act is of *purely statutory* origin; the Act abrogated a worker's common-law right of action against his employer, substituted the remedy set forth in the Act and made such reme-

principal subject matters: (1) permitting recovery of punitive damages "if applicable"; and (2) limiting punitive damage awards to $100,000. And, similarly, § 9(A) likewise consists of the same two subjects.

Thirdly, it is also significant that both statutes were amended during the 1986 legislative session to become effective November 1, 1986. I do not see any conflict between the two statutes relative to the issues raised in this appeal, but if there is then the statutes should be given a construction that will result in harmonizing their provisions and giving reasonable effect to both without doing violence to either. *Roach v. Atlas Life Ins. Co.,* 769 P.2d 158 (Okl.1989).

Pursuant to these parameters I analyze the two statutes as follows: First as I said, each addresses two principal subjects: (1) The basis for awarding punitive damages, and (2) the amount which can be awarded.

The workers' compensation provision, § 6, makes an employer liable for not only actual damages, but punitive damages, "if applicable," not to exceed $100,000. Standing alone the meaning of the statute is reasonably clear except for the statement which authorizes punitive damages—"if applicable."

It seems appropriate under these circumstances to turn to our punitive damages statute in Title 23—§ 9—for an answer to the question of when or under what circumstances the recovery of punitive damages is "applicable." In this regard one notes that the first sentence of § 9 deals with two subjects: (1) It identifies the type of conduct which justifies—or is "applicable to"—an award of punitive damages; and (2) it sets out the extent of permitted recovery, *i.e.,* "an amount not exceeding the amount of actual damages awarded."

Thus, it seems clear to me that in drafting § 6 the legislature intended that § 9 be looked to for an explanation of what conduct was necessary to satisfy the term "applica-

ble" as used in § 6, which is: Conduct which evinces "a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed." And, since § 6 sets its own limits on the punitive damage award without, incidentally, any such reference to the amount of actual damages, it is quite clear to me that the legislature did not intend to, and indeed did not, adopt the § 9 punitive damage limit but instead imposed a special § 6 limit of $100,000. In my opinion, such a construction is in keeping with the liberal construction to be accorded the exclusive, remedial provisions of the Workers' Compensation Act.

The fact is that in the final analysis the majority's judicial engraftment of the multi-cap provisions of § 9 onto § 6 would seem to have the incongruous effect of nullifying the single limit established by the legislature in § 6—a result not only contrary to the obvious intent of the legislature when it created the tort of retaliatory discharge,[12] but one which results in an undesirable disharmonious construction of § 6 and § 9.

Finally, the conclusion I reach is consistent with the result reached in *Wise v. Johnson Controls, Inc.,* 784 P.2d 86 (Okl.App.1989). To achieve the result it has, the majority has had to make findings of fact that the trial judge declined to make, namely, that the plaintiff failed to prove by clear and convincing evidence that the defendant was guilty of conduct evincing a wanton and reckless disregard for the rights of the plaintiff, although it clearly appears that the jury did so find and awarded $50,000 in punitive damages—an award well within the limits of § 6.

## II

Turning now to plaintiff Nalley's cross-appeal, I am unable to find any sound basis for the trial court's reduction of the jury's $50,000 punitive damages award. It was well within the limits set by the legislature as we have seen.

---

dy *exclusive. Governair Corp. v. District Court of Oklahoma County,* 293 P.2d 918 (Okl.1956).

**12.** *See* Laws 1976 ch. 217, §§ 1 through 3.

There is nothing in the record that I can find in the way of findings which support the trial judge's reduction of the award, nothing appears in any transcript of the proceedings, and nothing is recited in his journal entry of judgment. Beyond this I have examined the rest of the record and again fail to find any justification for the reduction. Thus, I am left with the conclusion that it was an arbitrary invasion of the province of the jury.

### III

It is therefore my opinion that: (1) The trial court's order overruling the defendant's motion for a new trial should be affirmed; and (2) the trial court's judgment granting the $25,000 remittitur should be reversed and the cause should be remanded with instructions to enter judgment for the plaintiff in accordance with the jury's verdict.