2007 OK CIV APP 14

Carl WALKER and Bette Walker, husband and wife, Plaintiffs/Appellants,

v.

ISON TRANSPORTATION SERVICES, INC., Defendant/Appellee.

No. 102183.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 15, 2006.

Certiorari Denied Jan. 22, 2007.

Anthony M. Laizure, Stipe, Harper, Laizure, Uselton, Edwards & Belote, L.L.P., Tulsa, OK, and, Tim Maxcey, Stipe, Harper, Laizure, Uselton, Edwards & Belote, L.L.P., McAlester, OK, for Plaintiffs /Appellants.

W. Wayne Mills, Margaret K. Myers, W. Wayne Mills & Associates, P.C., Oklahoma City, OK, for Defendant/Appellee.

CAROL M. HANSEN, Judge.

¶ 1 In this action for personal injury arising from a vehicular accident, Appellants, Carl and Bette Walker (Walkers), appeal from the trial court's denial of their motion for new trial after judgment on a jury verdict for them in the amount of $100,000.00. We hold the trial court properly rejected Walk-

ers' claim of jury misconduct in denying the motion for new trial and affirm.

¶2 The standard of review of a trial court's decision denying a motion for new trial is clear—"A trial court is vested with broad legal discretion in granting or denying new trial, and unless it clearly appears that the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal." *Dominion Bank of Middle Tenn. v. Masterson,* 1996 OK 99, 928 P.2d 291. Here, the trial court neither erred on a simple question of law nor acted arbitrarily.

¶3 The record shows Walkers' vehicle, which was towing a boat and trailer, was hit from the rear by a tractor-trailer owned by Appellee, Ison Transportation Services (Ison). The record also shows both Walkers were injured in the accident, incurring medical expenses of approximately $100,000.00, with other damages claimed well in excess of the $100,000.00 judgment.

¶4 After the trial, Walkers' counsel was advised by a juror that some members had discussed the possibility of Ison not having liability insurance. It is uncontroverted that liability insurance had not been mentioned at trial. Walkers moved for a new trial alleging jury misconduct in accordance with 12 O.S. 2001 651(2). In support of their motion, Walkers attached the affidavit of a juror, who stated:

> Several jurors mentioned they were concerned by the fact that there apparently was not any insurance to cover the verdict. Several jurors mentioned they were afraid that a large jury verdict would have a negative financial impact on the trucking company because it was a small trucking company and did not have insurance to pay for the verdict.

¶5 A long standing common law rule in this jurisdiction barred jurors from being heard to impeach the verdict of a jury on which he or she served. *Stade v. Bodycote Thermal Processing, Inc.,* 2004 OK CIV APP 70, 99 P.3d 733. The rationale for the rule is set out in some detail in *Stade,* quoting *Short v. Jones,* 1980 OK 87, 613 P.2d 452, and we will not repeat it here, but in summary, total abrogation of the rule would result in deliberations of the jury being the "constant subject of public investigation to the utter destruction of freedom of discussion and frankness, striking to the core of the jury system."

¶6 This common law rule has been codified at *12 O.S. Supp.2002 § 2606* (B), which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying shall not be received for these purposes.

¶7 Section 2606(B) has created a single exception to the common law rule, that is, where extraneous prejudicial information or outside influence was "improperly brought to bear upon any juror." *Stade,* 99 P.3d at 736. The Oklahoma Supreme Court first considered the § 2606(B) exception in *Short, supra.* There, however, the question involved a "quotient verdict" which the Court determined did not fall within the exception.

¶8 In *Willoughby v. City of Oklahoma City,* 1985 OK 64, 706 P.2d 883, the Court next considered the exception where, in a wrongful death action, a juror was allegedly authorized by the judge to conduct an "independent investigation" relating to the cause of death. It was asserted the juror obtained opinions from experts and other witnesses and related her findings to other jurors. In that case of first impression, the Supreme Court looked to federal holdings, particularly *In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6 th Cir.1982). There, the plaintiff's theory involved faulty wiring and a juror conducted experimentation on his own wiring, telling at least six other jurors of the results. The Oklahoma Supreme Court was

persuaded by the reasoning in the *Beverly Hills* case in that, in both cases, "jurors considered information regarding the results of a juror's independent investigation which had not been presented at trial by the parties", and found the exception applied.

¶ 9 However, the Supreme Court found the exception did not apply under the facts in *Oxley v. City of Tulsa*, 1989 OK 166, 794 P.2d 742. In *Oxley*, the plaintiff/appellant's motion for new trial was based in part on his "post-trial realization" that the jury foreman had lost a substantial amount of business as the result of a decision made by appellant. The affidavit of an alternate juror stated the jury foreman had stressed her appellant was wealthy and owned a 6,000 acre ranch in addition to the property in controversy. The affidavit of a juror described the jury's deliberation process and the juror's perception the jury foreman had coerced the jury into its verdict. Citing *Willoughby*, the Supreme Court held examination of the affidavits made it "patently obvious that all the allegations contained therein are inadmissible pursuant to [§ 2606(B) ]."

¶ 10 In *Crane v. Nuttle*, 2005 OK CIV APP 73, 121 P.3d 1124, the Court of Civil Appeals found the § 2606(B) exception applied and allowed juror testimony. There, three jurors, without court approval, went to the accident scene to "see how the accident could have happened." The juror affidavit at issue related these jurors, "based upon their observation at the accident scene," determined the accident could not have happened the way the plaintiff said it did. The *Crane* Court found the affidavit alleged all the necessary elements under § 2606(B) and held the trial court abused its discretion when it did not "explore the facts behind these allegations."

¶ 11 The common thread in *Willoughby*, *Beverly Hills*, and *Crane*,[1] was the "independent investigation" nature of the jurors' extraneous involvement. In each, jurors brought into the jury's deliberations information obtained by the jurors outside the regular evidentiary process. That factor is absent in the present case. There is nothing to show that any of the jurors had personal knowledge of Ison's insured status. The question if it had liability insurance was, at most, mere speculation on the part of the involved jurors. While jurors should restrict their deliberations to the evidence presented and the law on which they are instructed, they may properly draw inferences from the evidence and it is inevitable that in some cases inference will turn to speculation. However, this type of speculation is distinguishable from those instances where jurors independently and improperly introduce into deliberations matters purporting to possess evidentiary probity and weight.

¶ 12 The jurors discussion of Ison's liability insurance status here does not meet the standard of "extraneous" information as contemplated by § 2606(B). Accordingly the juror's affidavit regarding the jury's deliberation could not be considered. The trial court properly denied Walkers' motion for new trial and its judgment and order denying the motion for new trial are AFFIRMED.

JOPLIN, J., concurs, and BELL, P.J., dissents with separate opinion.

### DISSENTING OPINION

¶ 1 In the instant case, a juror averred that during deliberations, other jurors discussed and speculated about the non-existence of insurance and the negative financial effect of this lawsuit on this small uninsured family owned company. The speculation as to the non-existence of insurance was outside the scope of the trial and not in evidence and thus was extraneous evidence prejudicial to Plaintiffs' cause of action. Therefore, the juror was competent to testify about this information. *See Bledsoe*, 1992 OK CIV APP 25, 839 P.2d 673. In *Bledsoe*, the appellate court affirmed the trial court's determination that statements injected by a juror, which introduced extraneous prejudicial information, amounted to juror misconduct as contemplated by § 651. There, a juror speculated that certain excluded testimony of a passenger in an automobile involved in a train accident may have indicated the driver was attempting to outrun the train at the

---

1. *But cf., Bledsoe By and Through Bledsoe v. Turner*, 1992 OK CIV APP 25, 839 P.2d 673 (The Court of Civil Appeals affirmed new trial, allow-ing juror testimony regarding jury's discussion of possible reasons a deposition was not admitted into evidence.)

time of the collision. Because this information was outside the scope of the trial and not in evidence, the appellate court held a juror was competent to testify about this extraneous prejudicial information which influenced the jury's deliberations.

¶2 Because the lack of liability insurance was not introduced at trial, Defendant also counters Plaintiffs failed to show evidence of jury misconduct. I would hold it immaterial that the lack of liability insurance coverage was ever raised at trial. The fact remains the jury was influenced in its decision making by this extraneous and highly prejudicial speculation. Moreover, I find defense counsel's invocation of the "sympathy shield"—describing Defendant as a small, family owned, and lightly staffed business—invited speculation by the jury that Defendant was uninsured and would suffer financial ruin if forced to pay a large jury verdict.

¶3 Based on the foregoing, I would hold the trial court abused is discretion when it denied Plaintiffs' motion for new trial based on jury misconduct. The order of the trial court denying the motion for new trial should be reversed and remanded for a new jury trial. The majority of this Court is wrong. I respectfully dissent.