CHICOINE v. SAINT FRANCIS HOSPITAL



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CHICOINE v. SAINT FRANCIS HOSPITAL

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CHICOINE v. SAINT FRANCIS HOSPITAL
2018 OK CIV APP 16
Case Number: 115255
Decided: 12/22/2017
Mandate Issued: 03/07/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 16, __ P.3d __

 

GERALD DAVID CHICOINE, SHELLY ANNETTE CHICOINE, individually and as next friend of CAYMAN DAVID CHICOINE, Plaintiffs/Appellants,
v.
SAINT FRANCIS HOSPITAL, INC., SAINT FRANCIS HEALTH SYSTEM, INC., and KELLY J. JONES, R.N. Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF WAGONER COUNTY, OKLAHOMA

HONORABLE DAVID SHOOK, JUDGE

AFFIRMED

Jon L. (Lin) McGraw, McKinney, Texas, and Matthew J. Kita, Dallas, Texas, and Charles L. Boudreaux, Paul T. Boudreaux, Raymond S. Allred, Richardson Richardson Boudreaux, Tulsa, Oklahoma, for Plaintiffs/Appellants,

Mike Barkley, Brad Smith, F. Will DeMier, Jeff L. Wilson, Rachel D. Parrilli, The Barkley Law Firm, Tulsa, Oklahoma, for Defendants/Appellees.

Bay Mitchell, Presiding Judge:

¶1 Plaintiffs/Appellants Gerald David Chicoine and Shelly Annette Chicoine, individually and as next friend of Cayman David Chicoine (collectively "Plaintiffs") appeal the trial court's denial of their Motion for New Trial following the jury's return of a verdict in favor of Defendants/Appellees Saint Francis Hospital, Inc., Saint Francis Health System, Inc., and Kelly J. Jones, R.N. (collectively "Defendants"). Following our review of the record on appeal and the applicable law, the decision of the trial court is AFFIRMED.

I. Factual and Procedural Background

¶2 On July 23, 2009, Cayman Chicoine, a minor child, was admitted to Defendant Saint Francis Hospital ("SFH") for herpes encephalitis, a severe viral infection of the brain. On July 25, 2009, Cayman's treating physician, Dr. Barton, ordered that Cayman, who was then in a medically induced coma, receive 150 milligrams (mg) of pentobarbital to treat the brain seizures caused by the viral infection. Defendant Kelly J. Jones, R.N., unintentionally administered 2,000 to 2,500 mg of the medication to Cayman. At that time, the overdose was unknown to SFH staff. Cayman went into cardiac arrest (referred to in the record as a "code"). Nurses in the room then started CPR, and Cayman's condition stabilized after a few minutes. After the code but before he knew of the overdose, Dr. Barton also ordered the placement of a "bolt" to monitor Cayman's intracranial pressure ("ICP").[1] Plaintiffs presented evidence showing the bolt would not have been needed at that exact moment but for the overdose. Defendants also presented evidence showing the bolt would likely have been required at some point during Cayman's illness and that the bolt was used throughout his treatment to monitor ICP. Cayman survived his bout with herpes encephalitis but left SFH with severe brain injuries.

¶3 Plaintiffs brought suit against Defendants alleging the overdose of pentobarbital and Defendants' failure to properly intervene after the overdose resulted in brain damage to Cayman that was materially worse than brain damage that would have been caused by the herpes encephalitis alone. Defendants admitted Cayman received an excess dose of pentobarbital but denied that the excess dose caused any damage to him. Defendants further denied they were negligent in intervening or treating the overdose. Following a three week jury trial, which began February 22, 2016, the jury returned a defense verdict. A poll of the jury showed nine jurors sided with the Defendants with three deciding in favor of Plaintiffs. Following the entry of the Journal Entry of Judgment in Defendants' favor, Plaintiffs filed a Motion for New Trial arguing the jury's verdict was "contrary to law" because the jury ignored the trial court's instructions and alleged the jury was exposed to extraneous prejudicial information in the jury room in the form of one juror's opinion regarding the characteristics of pentobarbital and the effect malpractice claims might have on nurses' insurance premiums. The trial court denied Plaintiffs' Motion for New Trial and, relying on 12 O.S. §2606(B) and Warger v. Shauers, 574 U.S. ___, 135 S.Ct. 521 (2014), declined to admit the affidavits submitted to support Plaintiffs' allegations the jury was influenced by extraneous prejudicial information. Plaintiffs appeal from this denial of their Motion for New Trial.

II. Plaintiffs did not properly preserve an evidentiary
challenge to the jury's verdict.

¶4 Generally, appellate courts review the denial of a motion for new trial for error of a pure question of law or for an abuse of discretion. Robinson v. Okla. Nephrology Associates, Inc., 2007 OK 2, ¶6, 154 P.3d 1250, 1253. Here, Plaintiffs argue that because the jury's verdict was "contrary to law," we must apply a de novo standard of review to this contention of error. Specifically, Plaintiffs argue the verdict was "inconsistent with the undisputed evidence, the instructions [the jury] received, and the law of this State." Plaintiffs claim the undisputed evidence showed: (1) Defendants caused Cayman to receive an overdose of pentobarbital, (2) the overdose required Cayman to undergo CPR and to have the bolt implanted to monitor ICP, and (3) the act of CPR and bolt placement caused damage to Cayman. Given this undisputed evidence and having received standard jury instructions on negligence,[2] direct cause,[3] and damages,[4] Plaintiffs argue the jury had no option but to return a verdict in their favor and set the amount of damages to be awarded.

¶5 Plaintiffs insist they are not arguing the evidence was insufficient to support the jury's verdict, but we see no other way to view Plaintiffs' position. See Reedy v. Weathers, 1970 OK 130, 472 P.2d 914.[5] Put another way, Plaintiffs argue that, as a matter of law, they were entitled, at the close of all the evidence, to a directed verdict on the issue of liability and that they were entitled to be awarded some, or at least nominal, damages.[6] "Whether or not there is sufficient evidence to go to the jury in a law case is a question of law . . . that must be presented to the trial court by a demurrer to the evidence or motion to direct a verdict. . . ." Id. at ¶15. The trial court must be given the opportunity to make a ruling and the aggrieved party must note their exception to such ruling. Id. Only "then [will an appellate court] review the alleged error of law committed by the trial court in sustaining or overruling such demurrer or motion to direct a verdict." Id. "In order to preserve a challenge to the sufficiency of the evidence, a party must move for directed verdict at the close of all the evidence and before the issues are submitted to the jury." Hebble v. Shell Western E & P, Inc., 2010 OK CIV APP 61, ¶15, 238 P.3d 939, 945 (citing Drouillard v. Jensen Const. Co. of Okla., Inc., 1979 OK 126, ¶5, 601 P.2d 92, 94). Plaintiffs in this case never moved the trial court for a directed verdict. Accordingly, we agree with Defendants that Plaintiffs waived this issue for purposes of their Motion for New Trial and our appellate review. The trial court did not abuse its discretion in denying Plaintiffs' Motion for New Trial on these grounds.

III. The affidavits supporting Plaintiffs' Motion for New Trial were properly
excluded by the trial court.

¶6 Plaintiffs also argued in their Motion for New Trial that they should be granted a new trial because extraneous prejudicial information had been introduced into the jury deliberations. The Motion was supported by affidavits of Jurors J.T. and V.B. who claimed that (1) Juror A.S. told the other jurors during deliberations that he learned pentobarbital was not a vasodilating drug while he helped his wife study for her nursing license exam, and (2) when Juror J.T. told the jury members he thought SFH's nurses were lying about their conduct during Cayman's code to keep their liability insurance premiums from increasing, Juror A.S. opined that his wife's liability insurance did not increase when claims were made. According to Plaintiffs, the determination of whether pentobarbital was a vasodilating drug was material to whether SFH met the standard of care in treating Cayman and would explain why Cayman needed CPR after the overdose. Plaintiffs argued Juror A.S.'s statements qualified as extraneous prejudicial information because it was an assertion of fact related to the issue the jurors were to decide. Further, Plaintiffs argued the statements regarding nurses' malpractice insurance bore upon the jurors' determination of witness credibility. Defendants responded with their own juror affidavits generally denying these statements although Juror A.S. did agree that he stated his wife's insurance premiums would not increase significantly with a claim. Additionally, Defendants argued Juror A.S.'s alleged statements were not extraneous prejudicial information because they merely reflected his life experiences. At the hearing on the matter, no witnesses were called, and Plaintiffs relied on the affidavits attached to their Motion. The trial court refused to admit the affidavits under 12 O.S. §2606(B) and Warger v. Shauers, 574 U.S. __, 135 S.Ct. 521 (2014) and denied Plaintiffs' Motion.

¶7 "We review a trial court's order denying a motion for new trial for error of a pure question of law or for an abuse of discretion which is arbitrary, clearly against the evidence, and manifestly unreasonable." Robinson, 2007 OK 2, ¶6. Here, the trial court's decision to deny a new trial also rested on its decision to deny admission of the juror affidavits which purported to show that extraneous prejudicial information was improperly brought to the jury's attention. This decision is also reviewed for manifest error or an abuse of discretion. See Ledbetter v. Howard, 2012 OK 39, ¶22, 276 P.3d 1031, 1038; Crane v. Nuttle, 2005 OK CIV APP 73, ¶11, 121 P.3d 1124, 1127.

¶8 Title 12 O.S. §2606 codified the long-standing common law rule, often referred to as the "no impeachment" rule, prohibiting jurors from testifying to impeach the verdict of a jury on which they served. "The rule that jurors may not impeach their verdict was designed to encourage free and frank discussion among jurors, promote verdict finality, protect jurors from harassment by losing parties, and preserve the viability of the jury system." Ledbetter, 2012 OK 39, ¶2 (Winchester, J., dissenting). See also Short v. Jones, 1980 OK 87, 613 P.2d 452 (applying the common law predecessor to §2606).[7] Subsection (B) "created a single exception to this common law rule" which allows a juror to testify on the issue of whether "extraneous prejudicial information or outside influence was improperly brought to bear" during jury deliberations. Walker v. Ison Transportation Services, Inc., 2007 OK CIV APP 14, ¶7, 152 P.3d 894, 895 (quoting 12 O.S. §2606(B)) (internal quotations omitted). Subsection (B) provides in full:

Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying shall not be received for these purposes.

12 O.S. 2011 §2606(B).

¶9 Neither the statute itself nor Oklahoma case law has defined the terms "extraneous prejudicial information" or "outside influence."[8] Oklahoma's appellate courts have found juror testimony or affidavits admissible under §2606(B) when information from outside the testimony and exhibits admitted at trial was inserted into the jury's deliberations.[9] When applying the same evidentiary statute, the Oklahoma Court of Criminal Appeals described the exception as allowing juror testimony on "information injected into the deliberation process from the outside [which does not include] information coming from the juror's own subjective experiences and background. . . ." Hawkins v. State, 2002 OK CR 12, ¶45, 46 P.3d 139, 148 (finding that jurors could not testify regarding their alleged misunderstanding of what the term "life without parole" meant). In federal jurisprudence, "information is deemed 'extraneous' if it derives from a source 'external' to the jury."[10] Warger, 135 S.Ct. at 529 (citing Tanner v. United States, 483 U.S. 107, 117, 107 S.Ct. 2739 (1987)).[11] "'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." Id. While our appellate courts have not explicitly adopted this understanding of external versus internal matters, the majority of our reported decisions are consistent with this approach. See note 9, supra. However, our Supreme Court's most recent decision on the issue, Ledbetter v. Howard, 2012 OK 39, 276 P.3d 1031, does not conform to this approach. This is the case Plaintiffs urge us to apply to the case at bar.

¶10 In Ledbetter, the Supreme Court upheld the grant of a new trial in a medical negligence case where the plaintiff suffered from diabetes. Id. at ¶20. The juror affidavits alleged the jury foreperson, who was a nurse, shared her experiences in the treatment of diabetic patients in an "attempt[] to influence her fellow jurors based on her professional knowledge and experiences, all while acting in the leadership position of foreperson on the jury."[12] Id. at ¶18. When finding the juror affidavits admissible under §2606(B), the Supreme Court stated the jury foreperson's statements were "made as statements of fact by the foreperson; involved purportedly extraneous information arising solely from the foreperson's professional experience; and were intended to sway the jury toward a defendant's verdict." Id. at §16. The Supreme Court specifically noted that during voir dire the foreperson "assured the [trial court] that nothing about her experiences would cause her to be biased and that she would not substitute her experience for the testimony of the witnesses in the trial." Id. at ¶14.

¶11 We find the rationale employed in Ledbetter inapplicable to this case. First, Juror A.S. in this case is not a professional like the nurse foreperson in Ledbetter. He is married to a nurse. He is not, himself, a nurse. Second, Juror A.S. did not mislead counsel in voir dire and was not asked to, nor did he, make any specific guaranty regarding any knowledge he may have gained because of his wife's profession.[13] These facts were central to the Supreme Court's determination that the foreperson's statements were admissible under §2606(B). Id. at §§14, 16. See also id. at ¶20 ("Counsel were entitled to rely on the foreperson's guaranty to the trial court that she would not allow her professional expertise to override the testimony presented."). Further, the Supreme Court made clear the decision was limited and based upon the particular facts of the case. See id. at ¶18.[14] We must also note the different procedural stance. In Ledbetter, the Supreme Court was upholding the grant of a new trial and showed proper deference to the trial court's decision. Id. at ¶22.[15] Here, just the opposite has occurred. The trial court in this case, after overseeing voir dire and observing the entire trial, determined that Juror A.S.'s purported statements during jury deliberations did not qualify as "extraneous prejudicial information" or "outside influence" to qualify for the exception to the no impeachment rule set forth in §2606(B). We agree.

¶12 We view the case at bar to be strikingly similar to Caldararo v. Vanderbilt University, 794 S.W.2d 738 (Tenn. Ct. App. 1990). In that case plaintiff was the wife of a diabetic patient who alleged his brain damage was caused by nurses failing to properly intervene after he went into cardiac arrest. Id. at 740. The Court of Appeals of Tennessee found that juror affidavits did not contain extraneous information under that state's application of FRE 606(b) when such affidavits alleged the jury foreperson "repeated references to the fact that his wife was a nurse. . .[and] argued. . . the Vanderbilt nurses would have determined whether [plaintiff] was breathing even if they thought his difficulties were diabetes-related." Id. at 741. "A juror's personal experiences unrelated to the litigation are not external information," but "[a] juror's personal experiences directly relating to the parties or events directly involved in the litigation may be." Id. at 744 (citations omitted). The Tennessee court found that the juror's affidavits were not admissible because they did not show that the foreperson had "prior or extraneous knowledge of the parties or the events that gave rise to this suit" and "[a]t most, [the foreperson] claimed to have some specialized knowledge about diabetics and proper resuscitation procedures, presumably because he was married to a nurse." Id. at 745. "This is not the type of extraneous information that requires us to overturn a verdict." Id. We agree with the reasoning of the Tennessee court.

¶13 Juror A.S. did not have knowledge specifically relating to the facts and circumstances giving rise to Plaintiffs' suit. The affidavit claimed Juror A.S. purported to have some knowledge of the drugs used to treat Cayman and of the general nature of nurse's liability insurance.[16] "[I]t would be unreasonable, and perhaps unwise, to expect juries to be completely sterilized and free of any external influences. The jurors' various attitudes, philosophies, experiences and backgrounds are the 'very human elements that constitute one of the strengths of the jury system'." Id. (quoting United States v. McKinney, 429 F.2d 1019, 1022-23 (5th Cir. 1970), cert. denied, 401 U.S. 922 (1971). Our jury system relies upon jurors bringing their "thoughts and backgrounds to the deliberations." Nalley v. Kellywood Co., 1993 OK CIV APP 80, ¶9, 867 P.2d 1336, 1338. See also OUJI 1.8A.[17] A "juror's own subjective experiences and background" are not extraneous as that term is used in §2606(B). See Hawkins, 2002 OK CR 12, ¶45. See also Ledbetter, 2012 OK 39, ¶6 (Gurich, J., concurring).[18] "Moreover, in difficult line-drawing cases, the line should be drawn in favor of juror privacy, and the testimony should be disallowed." Hawkins, 2002 OK CR 12, ¶45.

¶14 Considering the record before us and the procedural posture of the case, we cannot say that the trial court abused its discretion or manifestly erred in refusing to admit the juror affidavits in support of Plaintiffs' Motion for New Trial and in denying the same.

¶15 The decision of the trial court is AFFIRMED.

BUETTNER, C.J., and SWINTON, J., concur.

FOOTNOTES

[1] A "bolt" is a small sensor surgically implanted in the skull which rests on the surface of the brain and is used to monitor ICP.

[2] OUJI 9.1; OUJI 9.2.

[3] OUJI 9.6.

[4] OUJI 4.2; OUJI 4.3.

[5] In Reedy, ¶¶12-13, the plaintiff in a car accident case alleged for the first time on appeal that the verdict and judgment for defendant "were not sustained by sufficient evidence and were contrary to law" because, given the undisputed evidence presented at trial, the only conclusion the jury could have reached was to find the defendant liable. In that case, as here, the plaintiff never "called the trial court's attention to the alleged insufficiency of the evidence, under the law" by moving for a directed verdict, so the Supreme Court declined to review this contention of error on appeal. Id. ¶¶14-16.

[6] In our review of the record on appeal, and specifically the jury instructions, we note the jury was not instructed on nominal damages. As presented to the jury, it was clear that Plaintiffs were seeking damages for the exacerbation of Cayman's brain damage allegedly caused by the pentobarbital overdose and Defendants' intervention afterwards, not for any alleged damage he suffered for the physical act of CPR and the insertion of the bolt. "It is the function of the jury to properly evaluate the various elements of alleged damages." Park v. Security Bank & Trust Co., 1973 OK 72, ¶15, 512 P.2d 113, 117. Here, the jury did so and found that Plaintiffs suffered no damage as a result of Defendants' actions.

[7] In Short, 1980 OK 87, ¶11, the Supreme Court revisited an earlier adoption of the common law version of the no impeachment rule and explained the reasoning behind the exclusion of juror testimony to impeach a verdict:

The admissibility of such material would be a threat to the jurors' very security in that it would encourage perjury, through bribery and other less subtle methods of persuasion, after the jury had returned to their private abodes, and the slight burden of jury duty falling on the citizen would not cease upon rendition of a verdict and discharge of the jury, but continue on indefinitely. The exclusion of such matters is necessary to preserve the security of the jurors, the secrecy of their deliberations, and the finality of the judgment thereby rendered.

[8] Similar to federal jurisprudence interpreting Federal Rule of Evidence ("FRE") 606(b), Oklahoma's appellate decisions do not appear to differentiate between the two terms. See 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence 2d § 6075 (2d ed.) ("The [federal] courts have not fully clarified the meaning of these two terms, often treating them as interchangeable or even abandoning the language of the rule entirely in favor of the hybrid 'extraneous influence'.").

[9] Willoughby v. City of Oklahoma City, 1985 OK 64, 706 P.2d 883 (juror conducted independent investigation relating to cause of death); Graybeal v. Martin Sand & Gravel, 2008 OK CIV APP 28, 179 P.3d 1278 (jurors' affidavits admissible where jury foreperson made statement of fact indicating that personal representative had received large insurance settlement); Thompson v. Krantz, 2006 OK CIV APP 60, 137 P.3d 693 (a juror in a medical malpractice case conducted an internet search and obtained evidence regarding medical procedures and the results of other, similar lawsuits); Crane v. Nuttle, 2005 OK CIV APP 73, 121 P.3d 1124 (three jurors viewed the accident scene to "see how the accident could have happened" without court permission); Bledsoe By & Through Bledsoe v. Truster, 1992 OK CIV APP 25, 839 P.2d 673 (jury misconduct in speculating that excluded deposition contained material weighing on decision).

[10] Oklahoma's statute is modeled upon FRE 606. Thus, federal cases are helpful when interpreting §2606(B). See Willoughby, 1985 OK 64, ¶12.

[11] Warger, 135 S.Ct. at 524, involved a negligence suit arising from a motorcycle crash. During voir dire, a potential jury member said she could decide the case fairly. Id. This person eventually became the jury foreperson and revealed during deliberations that her daughter had been involved in a deadly car crash and opined that a lawsuit would have ruined her life. Id. at 524-25. The jury returned a defense verdict, and another juror came forward with the foreperson's statements after the verdict was returned. Id. The U.S. Supreme Court rejected the plaintiff's argument the no impeachment rule did not apply to alleged misrepresentations during voir dire and held that affidavits from other jurors setting forth the foreperson's statements during jury deliberations were inadmissible under FRE 606(b) because the affidavits did not concern "extraneous prejudicial information." Id. The Court held that the foreperson's experience with her daughter's car crash and her opinions thereon fell within the "internal" side of the divide. Id. Arguably, our Supreme Court's decision in Ledbetter, which deemed admissible juror affidavits concerning misleading statements during voir dire, conflicts with the U.S. Supreme Court's reasoning in Warger, which was decided two years after Ledbetter. See paragraph 10, infra. However, we need not reconcile the two cases to decide the case before us today as it does not involve any allegations that Juror A.S. misled counsel during voir dire. We look to Warger only for guidance on how federal courts define "external" and "internal" influences on jury deliberations.

[12] The malpractice alleged in Ledbetter involved the misdiagnosis of Charcot foot, a disease of the nerves affecting diabetic patients. Ledbetter, 2012 OK 39, ¶¶7-8, n. 3. The majority opinion detailed the jury foreperson's statements as contained in the affidavits offered in support of the plaintiff's motion for new trial. Id. at ¶15. The affidavits stated the nurse foreperson: (1) eagerly shared her experiences and knowledge of the proper care and treatment of diabetic patients; (2) said she had been in "similar situations;" (3) said it was common for doctors to say a patient's condition was normal when it was not; (4) said "all diabetics have podiatrists" and questioned by plaintiff did not have one; (5) said, based on her experience, plaintiff had prior foot problems and was not following his doctor's instructions; (6) said that the four insulin shots per day taken by plaintiff showed he was not following instructions; and (7) said, based on her experience, if plaintiff had Charcot foot, an earlier diagnosis would not have helped his condition. Id.

[13] Counsel knew Juror A.S.'s wife was a nurse at a different hospital. During voir dire, Juror A.S. stated he "develop[ed] his own opinions" regarding malpractice issues and that he generally sided with the patient while his wife sided with "the hospital. . . ."

[14] "This is not a case in which we need make any sweeping statement as to when or how a professional may utilize individual training or expertise in the deliberative process or even may be allowed to communicate the same to fellow fact finders." Ledbetter, 2012 OK 39, ¶18.

[15] When describing the trial court's actions, the Supreme Court stated:

The trial judge conducted the initial voir dire in which the foreperson assured him that she would not allow her professional background to be substituted for the evidence presented by the witnesses; was present during the trial; observed the witnesses; and heard their testimony. After considering the motion for new trial and the juror's affidavit, the response, and the argument of counsel for all parties, he determined that the statements of the foreperson, taking on the persona of an expert witness during jury deliberations, constituted conduct materially and adversely affecting the Ledbetters' right to a fair trial. On the record presented, there has been no clear showing of manifest error and an abuse of discretion.

Ledbetter, 2012 OK 39, ¶22.

[16] We must also note that 12 O.S. §2606(B) prohibits juror testimony on the actual effects the alleged extraneous information had on the verdict. Id. ("[A] juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations."). See also Ledbetter, 2012 OK 39, ¶7 (Gurich, J., concurring). Accordingly, the portion of the affidavits describing the effect Juror A.S.'s statements purportedly had on the jury were inadmissible regardless of whether the rest of the affidavit fell within the exception to the no impeachment rule set forth in §2606(B). 12 O.S. §2606(B); see Ledbetter, 2012 OK 39, ¶7 (Gurich, J., concurring). See also U.S. v. Howard, 506 F.2d 865, 869 (5th Cir. 1975) ("the district court must disregard those portions of the affidavit purporting to reveal the influence the alleged prejudicial extrinsic matter had upon the jurors").

[17] Oklahoma Uniform Jury Instruction 1.8A, which was provided to the jury in this case, provides in part: "From all the testimony and evidence seen by you during the trial, and using the reasoning which you each have, you will make your decision."

[18] In an attempt to clarify the process for deciding when a juror with relevant professional experience has introduced "extraneous prejudicial information" as that term is used in §2606(B), Justice Gurich explained:

When determining whether a juror with expertise improperly introduced extraneous information to the jury, the trial court must first decide whether the experience used by the juror in deliberations was part of the juror's background, gained before the juror was selected to participate in the case or was the result of independent investigation into a matter relevant to the case.

Ledbetter, 2012 OK 39, ¶6 (Gurich, J., concurring).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2002 OK CR 12, 46 P.3d 139, 73 OBJ 918, HAWKINS v. STATE
Discussed at Length
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 25, 839 P.2d 673, 63 OBJ 3347, Bledsoe By and Through Bledsoe v. Truster
Discussed
 1993 OK CIV APP 80, 867 P.2d 1336, 65 OBJ 571, Nalley v. Kellwood Co.
Discussed
 2005 OK CIV APP 73, 121 P.3d 1124, CRANE v. NUTTLE
Discussed at Length
 2006 OK CIV APP 60, 137 P.3d 693, THOMPSON v. KRANTZ
Discussed
 2007 OK CIV APP 14, 152 P.3d 894, WALKER v. ISON TRANSPORTATION SERVICES, INC.
Discussed
 2008 OK CIV APP 28, 179 P.3d 1278, GRAYBEAL v. MARTIN SAND & GRAVEL
Discussed
 2010 OK CIV APP 61, 238 P.3d 939, HEBBLE v. SHELL WESTERN E & P, INC.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1970 OK 130, 472 P.2d 914, REEDY v. WEATHERS
Discussed
 1973 OK 72, 512 P.2d 113, PARK v. SECURITY BANK AND TRUST COMPANY
Discussed
 2007 OK 2, 154 P.3d 1250, ROBINSON v. OKLAHOMA NEPHROLOGY ASSOCIATES, INC.
Discussed at Length
 2012 OK 39, 276 P.3d 1031, LEDBETTER v. HOWARD
Discussed at Length
 1980 OK 87, 613 P.2d 452, Short v. Jones
Discussed at Length
 1979 OK 126, 601 P.2d 92, DROUILLARD v. JENSEN CONST. CO. OF OK
Discussed
 1985 OK 64, 706 P.2d 883, Willoughby v. City of Oklahoma City
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2606, Competency of Juror as Witness
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA