Truman GARNER, Plaintiff in Error,

v.

Helen Marie MYERS, Defendant in Error.

No. 37377.

Supreme Court of Oklahoma.

Oct. 1, 1957.

Rehearing Denied Nov. 26, 1957.

**412** 

 

Smith, Johns, Smith & Neuffer, By Gomer Smith, Jr., Oklahoma City, and Clarence Bowie, Pauls Valley, for plaintiff in error.

Pierce, Mock & Duncan, Calvin W. Hendrickson, Oklahoma City, of counsel, for defendant in error.

BLACKBIRD, Justice.

Plaintiff in error was a guest passenger in a Chevrolet Sedan automobile, driven by one Harris, traveling west on State Highway No. 19, near Maysville, Oklahoma, when it was struck by a Ford Club Coupe, which defendant in error was driving east on the same road. The impact of the collision turned the Harris car over, and plaintiff in error suffered personal injuries therefrom. Thereafter, he instituted the present action, as plaintiff, against defendant in error, as defendant, for damages on account of said injuries. The parties will hereinafter be referred to as they appeared in the trial court.

Defendant's principal defense to the action was that, as to her, the collision was an unavoidable accident and was caused solely by the negligence of a third party, one Reynolds, who drove his Chrysler automobile onto the highway just ahead of her car. She alleged in substance that the latter incident created a "sudden emergency" during which, in attempting to avoid striking the Chrysler, she lost control of her car and careened across the road and struck the car in which plaintiff was riding.

At the close of the trial, the jury returned a verdict in favor of defendant, and, after the overruling of his motion for a new trial, plaintiff perfected the present appeal.

The particular place on the highway, where the collision occurred, was just east of the Dill Service Station, which was located on the south side of the highway, with its front facing north. The station is on, or near, the crest of a hill that the highway transverses, and over which plaintiff's car had just passed in coming down the highway toward the station and defendant's car. Adjoining the station on the east, with its front, or north, line paralleling the highway, was a used car lot. As defendant's car neared the station from the west, the Chrysler, driven by Reynolds, came from the used car lot (or its vicinity) onto the highway, and headed east. Defendant testified that she was "a hundred or maybe two hundred feet" from the Chrysler when she first saw it approaching the highway, but, that it was going slow and she thought it was going to stop, so she went on, but "all of a sudden * * * (it) pulled right out in front of me * * *". According to her testimony, when the Chrysler turned east onto the highway, the distance between it and her car had been shortened (from "a hundred or two hundred feet") to "maybe forty feet"; she applied her brakes, but, to avoid hitting the rear end of the Chrysler, also "pulled to the right * * *". This brought the right, or south, side of her car off of the pavement onto the graveled driveway in front of the filling station and used car lot. The evidence reasonably tends to show that then, to get her car entirely back on the paved portion of the road, and more particularly to avoid hitting a culvert paralleling the road's graveled shoulder at the east edge of this driveway, the defendant turned her car to the left; she "was excited" and her car's rear end skidded. Also, according to her testimony, when this happened, her car ran directly across the center line of the highway, "and then" she "noticed" the car in which plaintiff was riding. Instead of her car hitting plaintiff's "head-on" however, its left front corner scraped the left rear fender of the latter, which, due to the impact, rolled down the side of the embanked north shoulder of the highway, turning over twice as it did so.

 In plaintiff's brief, many assignments of error are argued, but since, as we view the case, at least one of them presents substantial ground for a new trial, it will be unnecessary to deal with all of them.

One of the arguments under plaintiff's Propositions II to V, both inclusive, is, in substance, that by its instructions, the trial court, in effect, placed upon plaintiff the burden of proving that, in the situation above described, the defendant was not confronted with a sudden emergency and therefore that the accident was not unavoidable. Plaintiff's counsel point out that though, by its Instruction No. 9, the trial court indicated to the jury that they might find for the defendant on the ground of her defense of sudden emergency, still the court gave the jury no criterion with which to determine whether or not she had established such defense. They point out that the only instructions given with reference to burden of proof cast upon plaintiff the burden of proving defendant negligent by a preponderance of the evidence. Tit. 47 O.S.1951 § 121.4(f) (1) states in substance that no vehicle shall at any time be driven to the left side of the roadway when approaching the crest of a grade, or upon a curve in the highway, where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction. Subdivision (i) (1) of said section states, in substance, that on a roadway, divided into two or more clearly marked traffic lanes, a vehicle shall be driven as nearly as practical entirely within a single lane until the driver has first ascertained that any other movement can be made with safety. The last paragraph of said sec. 121.4, makes the violation of either one of these rules of the road a misdemeanor and punishable by fine and/or imprisonment. In its Instruction No. 12, the trial court apprised the jury of the first one of these rules and, in its Instruction No. 14, properly instructed the jury that the violation of a State law in the operation of a motor vehicle is negligence per se, but that before a person found guilty of such negligence, "may be held liable in damages therefor, it must appear from a preponderance of the evidence, that it was the proximate cause of the injuries * * *". The court did not tell the jury, by any instruction however, that the undis-

puted fact that defendant was driving on the wrong side of the highway when her car collided with the car in which plaintiff was riding made out a prima facie case for plaintiff and shifted the burden to defendant to produce sufficient evidence to make it appear equally as reasonable that she did so through no fault of her own, and as the result of a sudden emergency, or circumstances over which she had no control, as that she was in that position (on the wrong side of the road) because of her own negligence. In Kempfer v. Bois, 255 Wis. 312, 38 N.W.2d 483, 484, the court said:

> "The undisputed fact that the defendant's car was on the wrong side of the road established a prima facie case of negligence on the part of the defendant. The defendant then had the burden of producing evidence which would overcome the inference of negligence arising from the fact that the defendant's car was on the wrong side of the highway."

See also Roadway Express, Inc., v. Baty, 189 Okl. 180, 114 P.2d 935, 937; Oklahoma Producing & Refining Corp. of America v. Freeman, 88 Okl. 166, 212 P. 742; Larkey v. Church, 79 Okl. 202, 192 P. 569, and other cases cited in Vol. 4, part 2 (Perm. Ed.) of Cyclopedia of Automobile Law and Practice, Blashfield, p. 173, note 7.10 and p. 207, note 15; Lauber v. Lyon, 188 Wash. 644, 63 P.2d 389; Woods v. U. S., 10 Cir., 228 F.2d 734; Interstate Veneer Co. v. Edwards, 191 Va. 107, 60 S.E.2d 4, 23 A.L.R. 2d 532. In the last cited case, in which the plaintiff's cause of action for damages arose by reason of defendants' car "cutting across" to the wrong side of the road and colliding with plaintiff's decedent's car, the court held, in substance, that although plaintiff had the "ultimate" burden of showing that the death was caused by the defendants' negligence, the fact that the collision occurred on the wrong side of the road, under the circumstances there present, was sufficient to make out a prima facie case for plaintiff which required "the defendant to advance a reasonable explanation tending

to show that the death was due to something other than defendants' negligence, and such explanation is sufficient if it outweighs the plaintiff's prima facie case, or if it leaves the ultimate question of defendants' negligence in equipoise." In Seligman v. Orth (Hammond), 205 Wis. 199, 236 N.W. 115, 116, the court expressed itself in the same erroneous way that the trial court in this case, in effect, instructed the jury, by there saying that_in order for the plaintiffs therein to recover "it was necessary *for them to show that* (the defendant) was (on the wrong side of the road) *by reason of his lack of ordinary care."* This was in conflict with the Wisconsin Court's opinions in Hamilton v. Reinemann, 233 Wis. 572, 290 N.W. 194, and the Kempfer case, supra, and was to such extent specifically overruled by said court's opinion in the latter case. From our conclusion, on the basis of the foregoing, that the instructions of the trial court in this case, when considered as a whole, placed an undue burden on the plaintiff, to his probable prejudice, failing as they did to give the jury proper guidance in determining material issues of the case, as it was said court's duty, on its own motion, to do (Tit. 12 O.S.1951, § 577, subd. 3; Bay Petroleum Corp. v. May, Okl., 264 P.2d 734; Petty v. Frank, 194 Okl. 382, 151 P.2d 926; Oklahoma Producing & Refining Corp. of America v. Freeman, supra, and Oklahoma Producing & Refining Corp. of America v. Whalen, 88 Okl. 173, 212 P. 745), it follows that said court should have sustained plaintiff's motion for a new trial on account of that error alone.

■■■ However, whether or not defendant's burden of proof, on the basis of the evidence presented, was met, or discharged, was properly for determination by the jury, rather than the court. In their argument that the court erred in overruling plaintiff's motion for a directed verdict, his counsel says defendant's "own testimony conclusively shows that she failed to keep a proper lookout for others rightfully using the highway, that she failed to keep her car under such control as to be able to stop within the assured clear distance ahead, and that without any necessity for such action she purposely turned her car across the center line, striking plaintiff's car." As counsel view the matter, defendant was negligent in not applying her brakes when she first saw the Chrysler approaching the south edge of the highway in front of her, rather than "waiting" until it had turned onto the highway and she was only 40 feet behind it. They say it cannot be concluded, from any of the testimony, that defendant lost control of her car through no fault of her own. We cannot say, on the basis of the evidence, and the reasonable inferences to be drawn therefrom, that defendant did not lose control of her car. This was a matter for consideration by the jury in determining whether the predicament, she found herself in, came about through no fault of hers, or was the result of her negligence. Plaintiff's estimate of the speed of defendant's car, when he first saw it approaching, was slightly higher, but, by the majority of the evidence, the car was traveling near, but *within,* the lawful speed limit. At that time, the south half, or her lane, of the highway was clear of obstruction; and plaintiff points to nothing which, at that precise moment, made it her duty to slow down. Nor does he point to any rule of the road, or rule of law, which required her to do so at the moment she saw the Reynolds Chrysler slowly moving towards the highway, except Tit. 47 O.S.1951 § 121.3(a), providing that "no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead." At 50 miles an hour (the approximate speed indicated for defendant's car by most of the testimony) an auto will travel more than 70 feet in one second, according to the evidence of the highway patrolman, John Eddleman. Also, according to his evidence, normal human reaction time, may vary from one-half to one second. Under the evidence only the jury (rather than plaintiff's counsel or this court) could properly determine whether

defendant was negligent in not applying her brakes the instant she saw the Chrysler, and whether, if she had done so, the accident would have been averted. The court expressions plaintiff's counsel quote under their Proposition II are not applicable. The quotation from Johnson v. Santa Fe Trail Transportation, 206 Okl. 455, 244 P.2d 576, pertains to the duty of a motorist to avoid colliding with a car he is approaching from the rear, which, in this case, would be the Reynolds Chrysler defendant *did avoid* hitting. The quotation from Shead v. Mann, 199 Okl. 275, 185 P.2d 691, concerns excessive speed in the creation of emergencies at intersections. In Huey v. Stephens, Okl., 275 P.2d 254, defendant's car ran off the paved portion of the highway (previous to hitting the plaintiff's truck) for no reason that was explained by the evidence. Here, defendant drove her car off the south edge of the pavement *to avoid hitting Reynolds' Chrysler*. In this connection, see 38 Am. Jur., "Negligence", sec. 196 at Note 13. Tit. 47 O.S.1951 § 121.6(d) provides that the "driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway." Among the questions for answer by the jury in this case was whether the defendant could, under the circumstances, reasonably assume, even for an instant, that Reynolds, in approaching Highway No. 19 from the filling station and used car lot's driveway, would comply with said statute, and, whether or not—after it should have become apparent to her that he was not going to—she operated her car in a reasonable and prudent manner in view of the approach of plaintiff's car; and, whether she should have seen the latter before (according to her testimony) she apparently did; and should have acted otherwise, than in the manner she did, to avert striking it. Neither in our statutes, nor in the common law, is there attempted a prescription of everything that should, or should not, be done in a situation such as existed in this case when the defendant's and plaintiff's autos were approaching each other. In such case, where the standard of human conduct by which the negligence of the parties, or their lack of it, must be adjudged, is not fully prescribed by law, the determination of the matter must be left to the jury under the guidance of *proper* instructions of the court. See Dickinson v. Whitaker, 75 Okl. 243, 182 P. 901; City of Cushing v. Stanley, 68 Okl. 155, 172 P. 628; Ponca City Ice Co. v. Robertson, 67 Okl. 86, 169 P. 1111; 38 Am. Jur., "Negligence", sec. 346, notes 15, 17, 19, secs. 14, 22, 24 and 30. And this holds true (contrary to plaintiff's contention that verdicts should be directed by the court in cases where there is no dispute as to the facts) even in cases where the facts are undisputed, if reasonable men might draw different conclusions from them. Hudson v. Blanchard, Okl., 294 P.2d 554.

In view of the foregoing, it is our opinion that the trial court properly overruled plaintiff's motion for a directed verdict. However, in view of the fundamental error in the court's instructions hereinbefore pointed out, its judgment is hereby vacated and the cause is remanded to said court for a new trial.

CORN, V. C. J., and DAVISON, WILLIAMS, JACKSON and CARLILE, JJ., concur.

WELCH, C. J., and HALLEY and JOHNSON, JJ., dissent.