2004 OK CIV APP 70

Dorothy J. STADE, individually and as Co–Administrator of the Estate of Kurt E. Stade, Jr., deceased, Plaintiff/Appellant,

and

Hannah O. Phelps, Co–Administrator of the Estate of Kurt E. Stade, Jr., deceased, Plaintiff,

v.

BODYCOTE THERMAL PROCESSING, INC., a corporation, f/k/a Hinderliter Heat Treating, Inc., Defendant/Appellee.

No. 99,850.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 20, 2004.

M.E. McCollam, McCollam & Glasco, P.A., Tulsa, OK, for Plaintiff/Appellant.

Rachel C. Mathis, John A.L. Campbell, Darren T. Rackley, Richards & Connor, Tulsa, OK, for Defendant/Appellee.

Opinion by CAROL M. HANSEN, Judge:

¶1 Appellant, Dorothy J. Stade (Stade), appeals from the trial court's order denying her motion for new trial, after the trial court had granted judgment on a jury verdict for Appellee, Bodycote Thermal Processing, Inc. (Bodycote).[1] We hold the trial court properly denied Stade's motion for new trial and affirm.

¶2 The underlying action was one for wrongful death resulting from a bicycle/truck accident in which the deceased, Kurt Stade, was the bicycle rider and Bodycote's employee drove the truck. In her motion for new trial, Stade alleged, *inter alia,* [a] the jury was instructed on comparative negligence, [b] the jury found the deceased was 58.75% negligent, [c] as a result of the jury's impasse on the question of negligence, nine of the jurors agreed to each write down their assessment of negligence, add the total and divide by nine, and [d] this process resulted in a "quotient verdict", which is prohibited under Oklahoma law. In support of these allegations, Stade attached the affidavit of her counsel. This affidavit stated counsel had obtained the information about the comparative negligence determining process by talking to one of the three non-concurring jurors after the trial.

¶3 The standard of review of a trial court's decision denying a motion for new trial is clear—"A trial court is vested with

---

1. Stade's co-plaintiff, Hannah O. Phelps, has not joined Stade in this appeal and is therefore not a party to the appellate proceedings.

broad legal discretion in granting or denying new trial, and unless it clearly appears that the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal." *Dominion Bank of Middle Tenn. v. Masterson,* 1996 OK 99, 928 P.2d 291. Here, the trial court neither erred on a simple question of law nor acted arbitrarily.

¶ 4 The issue of "quotient verdicts" has been a matter for consideration of our appellate courts since the state's earliest days. In *St. Louis & S.F.R. Co. v. Brown,* 1914 OK 451, 45 Okla. 143, 144 P. 1075, the Supreme Court noted, "[a] quotient verdict is defined to be a verdict where each juror marks down an amount, then the amount thus marked down, being added together, the sum is divided by the number of jurors and the results rendered as their verdict." To be improper, this must be done as the result of an agreement in advance for it to be their verdict. *Id.,* at 1077.

¶ 5 Stade has, however, failed to direct us to any Oklahoma civil action in which the appellate court has overturned a judgment based on a jury verdict because it was, as commented in *Brown,* "arrived at by aggregation and average", that is, a quotient verdict. The lack of such cases is largely due to two factors. The first is that the facts of the case, as in *Brown,* do not establish the verdict was the result of an antecedent agreement to accept aggregation and average without further discussion and approval of the average by the requisite number of jurors.

¶ 6 The second and more compelling reason is the rule, of equally long standing in this state as *Brown,* that a juror may not be heard to impeach the verdict of the jury on which he or she served. *See, e.g., Egan v. First Nat. Bank of Tulsa,* 1917 OK 541, 67 Okla. 168, 169 P. 621. The fact that the source of information here purportedly came from a juror who did not concur in the verdict does not exempt this case from application of the rule. As the Court stated in *Egan:*

> And the fact that the juror making the affidavit did not concur in the verdict re-

turned does not change the rule. For the rule is based upon public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room either during the deliberations of the jury or afterwards. It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration.

¶ 7 The Supreme Court applied this rule in *Short v. Jones,* 1980 OK 87, 613 P.2d 452, where the appeal was also based on allegations of a quotient verdict. The evidence there was affidavits from three jurors and the affidavit of counsel that he had gathered scraps of paper from the jury room which, he argued, showed each juror "voted on a damage figure which was then divided by 12 to arrive at a verdict." The *Short* Court refused to consider the evidence, explaining:

> ... the rationale behind our refusal to now allow impeachment of the jury's verdict here is supported by the same public policy stated to be the basis for the rejection of a juror's impeachment of the verdict he assisted in rendering in *Egan, supra.* The exclusion of testimony, depositions or affidavits of a juror impeaching his own verdict may often exclude the only possible evidence of the misconduct referred to and offers but little consolation (sic) to the individual considering himself wronged thereby. Nonetheless, a change in the principle, a change in the rule, would injure society generally, not simply an individual litigant, for as the Federal Supreme Court stated in *McDonald, et al. v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300, modification of the rule would open the door to the most pernicious acts and tampering with jurors, all verdicts could be and many would be followed by an inquiry on the part of the defeated litigant, jurors would be harassed and beset in an effort to establish misconduct sufficient to defeat the verdict, and the result would be that the considerations of the jury, intended to a *private* deliberation, would be a constant subject of public investigation to the utter destruction of freedom of discussion and

frankness, striking to the core of the jury system. (Emphasis in original).

¶ 8 This common law rule has been codified at 12 O.S. Supp.2002 § 2606(B), which provides, in pertinent part:

Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations.... An affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying shall not be received for these purposes.

■ ¶ 9 The only exception to § 2606(B) is where extraneous prejudicial information or outside influence was "improperly brought to bear upon any juror." Stade makes no assertion that any such information or influence played a role in the jury's determination here. In fact, in *Willoughby v. City of Oklahoma City*, 1985 OK 64, 706 P.2d 883, the Supreme Court noted it did not believe evidence of a quotient verdict fell within the "statutory exception to the general rule for the admissibility of juror testimony reflecting jury misconduct."

¶ 10 The foregoing public policy of this state precluding juror's giving evidence, in any form, which would go to the question of jury misconduct, has been set in our common law by the Supreme Court and, statutorily, by the Legislature. They have weighed the conflicting interests and have decided that on balance the public's greater interest is served by this preclusive rule.

¶ 11 Although Stade suggests a limited inquiry by the trial court may be permissible where there is a "suspicious verdict", we are unpersuaded such an exception may be read into § 2606(B). That section dictates that "a juror shall not testify as to *any* matter or statement occurring during the course of the jury's deliberations." (Emphasis added). A trial court's inquiring into the manner in which a verdict was reached would necessarily and improperly require the jurors to reveal what had occurred during deliberations. The Legislature has not provided an exception for inquiry by the trial court. Any action on our part to do so would amount to judicial legislation. That is beyond our authority.

¶ 12 Appellee's motion to dismiss Stade's appeal, as raised in its Answer Brief, is denied.

¶ 13 The trial court's judgment is AFFIRMED.

JOPLIN, J., and MITCHELL, P.J., concur.