2008 OK CIV APP 28

**Forrest Ralph GRAYBEAL, as Personal Representative of the Estate of Ruby Eileen Graybeal, Deceased, Plaintiff/Appellee/Counter–Appellant,**

v.

**MARTIN SAND & GRAVEL, Defendant/Appellant/Counter–Appellee.**

No. 104,057.

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 31, 2007.

Certiorari Denied March 3, 2008.

Dan Little, Scott Gallagher, Steve Oliver, Little, Little, Little, Windel, Coppedge, Oliver, Rowe, Landgraf & Gallagher, PLLC, Madill, OK, for Plaintiff/Appellee/Counter–Appellant.

William W. Speed, Ada, OK, for Defendant/Appellant/Counter–Appellee.

DOUG GABBARD, II, Presiding Judge.

¶1 Defendant Martin Sand & Gravel appeals the granting of a new trial, following a defendant's verdict, on the grounds that the jury received extraneous information that the plaintiff had received an insurance settlement. Plaintiff Forrest Ralph Graybeal, as Personal Representative of the Estate of Ruby Eileen Graybeal, counter-appeals the denial of a requested jury instruction and a motion for a directed verdict. We affirm.

## FACTS

¶2 On the dreary, misty afternoon of April 2, 2005, Defendant's 10–wheel dumptruck veered across the center line of a Marshall County road and collided with a car driven by Ruby Graybeal, killing her. Plaintiff, who is Mrs. Graybeal's husband and Personal Representative of her estate, sued for negligence.

¶3 The trial was conducted during a three-day period in January 2006. The jury was allowed to view the scene of the accident. According to the Oklahoma Highway Patrol investigation, Defendant's driver told authorities he was approaching a curve in the road and touched his brakes, causing his vehicle to pull to one side. In attempting to counter-steer, the vehicle spun counterclockwise, into the lane of Mrs. Graybeal's oncoming vehicle. The OHP accident report concluded Defendant's truck had a brake out of adjustment,

which, along with the wet roadway, contributed to the accident.

¶ 4 Defendant's driver testified as he was coming up the road, "the front of my truck just went to the left. I was trying to get back into my lane, but I never could get back into my lane." He testified the road was unusually slick that day—"when it first rains on it, it gets extremely slick. It's some kind of oily like stuff on it." Defendant's expert testified that the wet road had tar tracks and different amounts of aggregate on it, and that if a driver's path "was along the tar tracks it wouldn't change abruptly, but if it for any reason goes over onto the rough road it would instantaneously change. He wouldn't change the wheel position whatsoever, but all of a sudden his vehicle would change direction." The expert opined the brakes on Defendant's truck would not have pulled the vehicle to the left because the truck had antilock brakes that kept the tires turning slowly.

¶ 5 Plaintiff moved for a directed verdict and later submitted a jury instruction on negligence per se, both of which the trial court denied. At the conclusion of the trial, the jury returned with a verdict in favor of Defendant by a 10–2 vote, and the trial court entered judgment thereon.

¶ 6 Subsequently, Plaintiff filed a motion for judgment n.o.v./new trial, based in part on the trial court's rejection of his proposed jury instruction, and also on jury misconduct. In support of the latter ground, Plaintiff attached affidavits from three jurors stating that the foreman had raised the matter of insurance during deliberations. For example, one affidavit stated:

> Statements which the foreman made as facts were that the insurance company on the truck had already settled with Mr. Graybeal and that Mr. Graybeal had already received a large settlement from the insurance company. He also stated as a fact that Mr. Graybeal was financially well-off and did not need the money.

¶ 7 Defendant submitted affidavits from the jury foreman and another juror denying the making of these statements.

¶ 8 At a hearing on the motion for new trial, the trial court heard testimony from six jurors over Defendant's objection. Three

stated the foreman had made the statements about insurance; three others-including the foreman-denied it. At the conclusion of the hearing, the trial court overruled Plaintiff's motion for judgment n.o.v., but granted Plaintiff's motion for a new trial based on jury misconduct. The court stated in its journal entry the following:

> In regard to Plaintiff's Motion for New Trial based upon extraneous, prejudicial information regarding insurance having been introduced into the jury room, having been considered by the jury, and possibly having affected the jury verdict constituting jury misconduct, the Court finds that it is not only just possible, but probable, that because of the discussions of insurance and the verdict being 10/2, a juror was convinced that there could be other litigation or other settlement with an insurance company that did not involve Defendant Martin Sand & Gravel directly; that the lawsuit was missing a party or the jurors did not want Defendant to suffer; that the argument that the discussions of insurance did not have anything to do with liability is "just flat wrong" because they were discussing insurance before they got through the issue of liability; that very objectively it is very probable that the discussions of insurance had an effect on a juror insofar as this case is concerned; that in this case the discussions of insurance could have had a devastating effect upon the verdict; and that it is very probable, not just possible, but very probable, that the evidence is clearly extraneous and therefore the Plaintiff's Motion for New Trial based upon improper prejudicial extraneous insurance information which would have influenced the verdict constituting jury misconduct and preventing a fair trial should be and is hereby sustained and a new trial should be and is hereby granted to Plaintiff.

¶ 9 Defendant appeals the granting of a new trial. Plaintiff counter-appeals the denial of his motion for a directed verdict and a proffered instruction.

## ANALYSIS

### 1. Defendant's Appeal——The Order Granting New Trial

 ¶ 10 A trial court is vested with wide discretion on whether to grant a new

trial. When it does so, its order will not be reversed on appeal unless the record clearly shows that the trial court either erred on a pure and unmixed material question of law or acted arbitrarily or capriciously. *Propst v. Alexander,* 1995 OK 57, ¶ 8, 898 P.2d 141, 144–45. If the new trial is granted by the same judge who tried the case, a much stronger showing of error or abuse of discretion is required for us to reverse than if the judge refused to grant a new trial. *Id.* at ¶ 8, 898 P.2d at 145. However, where the defeated litigant does not present valid reasons for a new trial, and the record is barren of sufficient legal grounds for ordering a reexamination of fact issues, we will hold that the trial court abused its discretion in sustaining the motion for new trial. *Clark v. Bearden,* 1995 OK 71, ¶ 13, 903 P.2d 309, 313. A trial court may not substitute its own judgment for that of a jury, and its order sustaining a motion for new trial will be reversed where it is based, to the exclusion of all others, on a wrong, incorrect, or insufficient reason or ground and there appears to be no tangible, substantial, or reasonably certain basis for concluding that if the cause were retried, the result would be different. *Dodson v. Henderson Props., Inc.,* 1985 OK 71, ¶ 5, 708 P.2d 1064, 1065–66.

■ ¶ 11 Defendant asserts the trial court erred in granting a new trial because the jurors' affidavits and testimony were inadmissible evidence, and because there was no basis for granting the new trial. Defendant relies on the long-standing common law rule barring jurors from being heard to impeach the verdict of a jury on which they served. *See, for example, Walker v. Ison Transportation Services, Inc.,* 2007 OK CIV APP 14, ¶ 5, 152 P.3d 894, 895. The rationale for this rule is that it protects jury deliberations from being the "constant subject of public investigation to the utter destruction of freedom of discussion and frankness, striking to the core of the jury system." *Stade v. Bodycote Thermal Processing Inc.,* 2004 OK CIV APP 70, ¶ 7, 99 P.3d 733, 735–36, quoting *Short v. Jones,* 1980 OK 87, 613 P.2d 452.

¶ 12 The common law rule is now codified at 12 O.S. Supp.2007 2606(B):

Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying shall not be received for these purposes.

In *Walker v. Ison Transportation Services, Inc.,* ¶ 7, 152 P.3d at 895, another division of this Court noted: "Section 2606(B) has created a single exception to the common law rule, that is where extraneous prejudicial information or outside influence was 'improperly brought to bear upon any juror.'" In determining whether the exception exists in a particular case, Oklahoma law provides clear principles and adequate guidance.

¶ 13 In *Willoughby v. City of Oklahoma City,* 1985 OK 64, 706 P.2d 883, the Supreme Court found the exception to the rule in a wrongful death case where a juror conducted an "independent investigation" relating to the cause of death. The Supreme Court concluded that "the jurors considered information regarding the results of a juror's independent investigation which had not been presented at trial by the parties." *Id.* at ¶ 14, 706 P.2d at 887. The "extraneous information" exception has been applied in other cases where one juror advised other jurors of extraneous information obtained from an "independent investigation," including: *Swift & Co. v. Kirkley,* 1942 OK 395, 131 P.2d 998 (jurors viewed the premises where the accident could have happened without court permission); *Crane v. Nuttle,* 2005 OK CIV APP 73, 121 P.3d 1124 (three jurors viewed the accident scene to "see how the accident could have happened" without court permission); and *Thompson v. Krantz,* 2006 OK CIV APP 60, 137 P.3d 693 (a juror in a medical malpractice case conducted an internet search and obtained evidence regarding

medical procedures and the results of other, similar lawsuits).

¶ 14 However, the exception is not limited to "independent investigation" situations. Under our statute, the exception applies to any situation where "extraneous prejudicial information was improperly brought to the jury's attention." Thus, it was applied in *Propst v. Alexander*, 1995 OK 57, 898 P.2d 141 (in a negligence case, jurors considered workers' compensation after plaintiff's surgeon accidentally mentioned it in violation of a motion in limine); *Negrate v. Gunter*, 1955 OK 118, 285 P.2d 194 (jurors viewed exhibits which had not been admitted into evidence); and *Peoples Finance & Thrift Co. v. Ferrier*, 1942 OK 343, 191 Okla. 364, 129 P.2d 1015 (jurors considered a memo used by counsel that was not admitted into evidence).

¶ 15 Likewise, in *Bledsoe By and Through Bledsoe v. Truster*, 1992 OK CIV APP 25, 839 P.2d 673, evidence was admitted that during a recess in the trial of a negligence case involving an automobile and a train, one of the jurors told other jurors that the reason the deposition of Traci Foster was not allowed to be heard by the jury was because Foster had testified that the plaintiff had attempted to outrun the train at the time of the collision. After a verdict in favor of the train engineer and railroad company, the plaintiff filed a motion for new trial on the grounds that the juror's statements constituted "extraneous prejudicial information." At the hearing on the motion, this exchange took place between the reporting juror and the attorney for the railroad:

A. I don't know if she knew somebody that had read it or had read part of it. I don't know. But the lady that mentioned it was-you know, she was talking about the deposition. I don't know where she got that information.

Q. *Do you know in your own mind whether or not she actually knew information that you all didn't know, or was speculating?*

A. *I don't know.*

*Id.* at ¶ 4, 839 P.2d at 675 (emphasis added). The trial court sustained the plaintiff's motion for new trial, and another division of this Court affirmed. Clearly, whether the juror's statement was based upon actual knowledge was irrelevant, because she made a positive, unambiguous statement of fact which was intended to persuade others regarding its truthfulness.

■ ¶ 16 In the case before us, there was evidence from three jurors that the foreman made statements "as fact" regarding matters outside the evidence. One affidavit stated:

Statements which the foreman made as facts were that the insurance company on the truck had already settled with Mr. Graybeal and that Mr. Graybeal had already received a large settlement from the insurance company. He also stated as a fact that Mr. Graybeal was financially well-off and did not need the money.

Another affidavit similarly stated:

During deliberations insurance was brought up and discussed. It was stated that the insurance company had already settled, that they were now going after the Arnolds personally and how much could they get out of a two truck company, that Mr. Graybeal was financially comfortable and that money would not bring Mrs. Graybeal back.

Although the foreman and another juror disputed the making of these statements, the trial court ultimately determined that the jury received this "clearly extraneous" information. When there is conflicting evidence on an issue of fact, we defer to the judgment of the trial court, which is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility. *Mueggenborg v. Walling*, 1992 OK 121, n. 3, 836 P.2d 112, 114.

¶ 17 Thus, the facts of this case are strikingly similar to *Bledsoe*, and we reach a similar result. The trial court found that the foreman made statements of fact, as opposed to speculation or the "possibility," that Plaintiff had already received an insurance settlement and financially did not need a favorable judgment. It is irrelevant whether the foreman actually conducted an "independent investigation," received this information in some other manner, or made the statements without any factual basis whatsoever. The result was the same. These statements were clearly improper, involved purportedly extraneous information, and were intended to sway the jury toward a defendant's verdict.

We agree with the trial court that the jurors' testimony regarding these statements was admissible under the "extraneous information" exception to 12 O.S. Supp.2007 2606(B).

¶ 18 As we have noted above, a trial court has wide discretion in granting a new trial and every presumption in favor of the correctness of its decision must be given. Here, the trial court assessed the evidence and the proceedings, and determined that the introduction of the extraneous information had a prejudicial effect, and that Plaintiff did not receive a fair trial. Defendant has not shown that the trial court erred on a pure and unmixed material question of law, or acted arbitrarily or capriciously. Therefore, we affirm the order granting a new trial.

## 2. Plaintiff's Counter–Appeal

### A. The Instructions

¶ 19 In his counter-appeal, Plaintiff asserts the trial court erred in declining to give the following instruction:

> The undisputed fact that Defendant Martin Arnold's vehicle was on the wrong side of the road when his vehicle collided with Ruby Graybeal's vehicle makes a prima facie case for Plaintiff, Forrest Ralph Graybeal as Personal Representative of the Estate of Ruby Eileen Graybeal, and shifts the burden to Defendant to produce sufficient evidence to make it appear equally as reasonable that the Defendant Arnold vehicle did so through no fault of its own, and as the result of circumstances over which Defendant Arnold or the Defendant Arnold vehicle had no control, as that he was in that position on the wrong side of the road because of his own negligence.

¶ 20 Plaintiff asserted he had established a presumption of negligence because Defendant's truck was on the wrong side of the road. For this reason, he asserts that it was Defendant's burden to rebut the presumption. The trial court did instruct the jury that violation of any of several statutes, including ones concerning driving on the right side of the road and maintaining brakes in good working order, "in and of itself would make such person negligent."

¶ 21 In reviewing a judgment following a jury trial, we will not disturb the judgment because of allegedly erroneous instructions unless it clearly appears that the instruction caused a miscarriage of justice or led to a different verdict than would have been rendered but for the alleged error. *Nail By and Through Nail v. Okla. Children's Mem'l Hosp.*, 1985 OK 101, ¶ 11, 710 P.2d 755, 759.

¶ 22 As support for his position, Plaintiff relies upon *Garner v. Myers*, 1957 OK 224, 318 P.2d 410, a case in which the defendant's car careened into the opposite lane and struck the plaintiff's car. The defendant asserted she skidded into oncoming traffic to avoid another car which pulled onto the highway in front of her. As in the present case, the trial court instructed the jury as to the laws on driving on the right side of the road and as to negligence per se. Also, similar to the instant case:

> The court did not tell the jury, by any instruction however, that the undisputed fact that defendant was driving on the wrong side of the highway when her car collided with the car in which plaintiff was riding made out a prima facie case for plaintiff and shifted the burden to defendant to produce sufficient evidence to make it appear equally as reasonable that she did so through no fault of her own, and as a result of a sudden emergency, or circumstances over which she had no control, as that she was in that position (on the wrong side of the road) because of her own negligence.

*Id.* at ¶ 5, 318 P.2d 410. The Supreme Court held that failure to instruct was error and required a new trial, because the trial court had placed an "undue burden" on the plaintiff. The Court's concern was that the jury had erroneously been instructed that, in effect, the plaintiff had the burden of showing that the defendant was on the wrong side of the road by reason of his lack of ordinary care.

¶ 23 The Supreme Court soon receded from the *Garner* holding. In *Wade v. Reimer*, 1961 OK 44, 359 P.2d 1071, the passenger sued for injuries sustained in a one-vehicle accident on a wet road where her vehicle came off the pavement on the right shoulder of the road and then slid back across the

width of the highway. The issue was whether the trial court should have instructed that a violation of the reckless driving statute constituted negligence per se, placing the burden on the defendant to overcome the presumption of negligence. The Court held that such an instruction was unnecessary, and distinguished *Garner* this way:

> [In *Garner*] the evidence showed beyond any dispute that at the time of collision defendant was proceeding on the wrong side of the highway under conditions which brought her in violation of an explicit state statute.... In the present cause defendant did not admit negligence and his alleged reckless driving ... presents a disputed issue of fact.

*Id.* at ¶ 3, 359 P.2d at 1072–73.

¶ 24 Likewise, in *Shoopman v. Travelers Insurance Company*, 1974 OK 6, 518 P.2d 1108, the plaintiff was injured when the defendants' vehicle crossed the center line and collided with the plaintiff. The defendants asserted the accident was due to a mechanical failure, and the jury returned a verdict in their favor. The plaintiff asserted the trial court's instructions should have put the burden on the defendants to show why their truck crossed the center line. The Supreme Court disagreed, distinguishing *Garner* this way:

> Although driving of an automobile on the wrong side of the road, in violation of the rules of the road is prima facie evidence of negligence and the trial court so instructed in the case at bar, neither *Clark* nor the *Garner* case will uphold the proposition that being on the wrong side of the road in violation of the rules of the road constitutes negligence per se, if being on the wrong side of the road is legally excusable. In other words, driving an automobile on the wrong side of the road in violation of the rules of the road, does not constitute negligence if the driver was without fault or was not guilty of negligence in being on the wrong side of the road.

*Id.* at ¶ 12, 518 P.2d at 1110–11. Since the jury received an unavoidable accident instruction, the Court held the jury had been sufficiently advised that the defendants had the burden to show their being on the wrong side of the road was without negligence on their part. The Court affirmed the judgment on the jury verdict in the defendants' favor.

¶ 25 Here, similar to *Wade* and *Shoopman*, Defendant denied culpability and asserted that the accident was caused by defective brakes and unforeseeable road conditions. While the trial court instructed the jury that driving on the wrong side of the road is a violation of state statutes, and that the violation of a statute "in and of itself would make a person negligent," it refused to give Plaintiff's requested negligence per se instruction. Under the facts and circumstances of this case, we find no requirement that it do so and we cannot say that its failure to do so caused a miscarriage of justice or led to a different verdict than would have been rendered but for the alleged error. While there was evidence to conclude the driver was negligent, there was also evidence from which the jury could conclude the accident was not due to driver error. The trial court's failure to give the instruction was not reversible error.

## B. The Refusal to Grant a Directed Verdict

¶ 26 Plaintiff also appeals the trial court's refusal to grant his motion for a directed verdict. A directed verdict "is a mechanism by which the judge controls the jury by taking the case out of the jurors' hands, and acts somewhat like a delayed summary judgment motion in that it determines that there are no genuine issues of fact that need to be sent to the jury." *Cook v. Bishop*, 1988 OK 120, ¶ 9, 764 P.2d 189, 191. In ruling on the motion, the trial court must consider all the evidence and all the inferences reasonably drawn therefrom favorable to the party against whom the motion is made, and any conflicting evidence favorable to the movant must be disregarded. *Trett v. Okla. Gas & Elec. Co.*, 1989 OK 54, ¶ 6, 775 P.2d 275, 277. On appeal, we review a trial court's ruling on a motion for directed verdict using a *de novo* standard. *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶ 6, 49 P.3d 732, 735. Under *de novo* review, "[a]n appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*,

1996 OK 125, n. 1, 932 P.2d 1100, 1103; *see also Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

¶ 27 Here, Plaintiff asserts that "Defendant/Appellant presented no evidence to rebut the presumption of negligence per se-that he drove his truck across the centerline and struck Mrs. Graybeal's vehicle in her lane of the road." He further asserts Defendant presented "absolutely no legally excusable reason" for the accident. We disagree.

¶ 28 Defendant presented evidence that its driver was going a proper speed with a proper lookout, and veered into the other lane due to the condition of the road. The jury was not required to reach that conclusion, but it certainly was entitled to do so, and taking the decision out of the jurors' hands would have been error.

¶ 29 Although Plaintiff relied on *Rose v. City of Tulsa,* 2005 OK CIV APP 30, 114 P.3d 462, we find that case distinguishable. There, a directed verdict was affirmed upon evidence that the plaintiff committed no negligence, the wetness of the road was known to the defendant's driver, and "the collision was not caused by unforeseen hazardous circumstances *and* indicated negligence on the part of City's driver." *Id.* at ¶ 12, 114 P.3d at 466.

¶ 30 In contrast, the present case contains evidence of "unforeseen hazardous circumstances"—the condition of the road due to the tar deposits and aggregate. Although Plaintiff argues that the expert's testimony and analysis amounts to nothing more than stating that part of a road might be slipperier than another part, this was clearly evidence of a potentially unforeseen hazardous circumstance. A directed verdict would have been inappropriate, even under *Rose.*

¶ 31 Recently, the Supreme Court has broadly stated, "In any negligence case the jury is free to find that none of the parties was negligent. Its freedom to make this choice does not depend on the plead defense of unavoidable accident. Finding no negligence on the part of any party is the jury's prerogative, not an aberration." *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, ¶ 14, 107 P.3d 595, 604 (emphasis omitted). Even under earlier cases that express the deference paid to the jury in much narrower terms, the facts of the instant case reveal evidence to support a judgment for Defendant. The trial court properly denied Plaintiff's motion for directed verdict.

## CONCLUSION

¶ 32 The trial court determined that the jury foreman made statements as fact that the plaintiff had already received an insurance settlement for the accident and was so well-off he did not need a favorable verdict. This evidence was admissible under the "extraneous information" exception to 12 O.S. Supp.2007 2606(B), and the trial court correctly received and considered same. The trial court assessed this evidence and the proceedings, and determined that the effect of this error was prejudicial, and that Plaintiff did not receive a fair trial. Defendant has not shown that the trial court erred on a pure and unmixed material question of law, or acted arbitrarily or capriciously, and we affirm the order granting a new trial. In view of this holding, it was unnecessary for us to consider Plaintiff's counter-appeal. Nevertheless, we find no error in the trial court's refusal to give the requested instructions and its refusal to grant a directed verdict. Accordingly, the judgment of the trial court is AFFIRMED.

GOODMAN, J. and RAPP, C.J. (sitting by designation), concur.